IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. _____

|  |  |
|---|---|
| JACQUELINE R. SMITH, <br><br>     Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF DEFENSE, <br> 1600 Defense Pentagon <br> Washington, D.C. 20301, <br><br> PETE HEGSETH, in his official capacity as Secretary of Defense, <br> 1600 Defense Pentagon <br> Washington, D.C. 20301, <br><br> STEPHEN FEINBERG, in his official capacity as Deputy Secretary of Defense, <br> 1600 Defense Pentagon <br> Washington, D.C. 20301, and <br><br> SEAN PARNELL, in his official capacity as Assistant to the Secretary of Defense for Public Affairs and Senior Advisor and in his individual capacity, <br> 1600 Defense Pentagon <br> Washington, D.C. 20301, <br><br>     Defendants. |  |

**COMPLAINT**
**Jury Trial Demanded**

1.     Defendants fired Jacqueline "Jacky" Smith because she exercised her First Amendment rights to publicly criticize Defendants' efforts to undermine those same rights.

1

2.  Ms. Smith is the wrongfully terminated, former Ombudsman of the newspaper *Stars and Stripes* ("Stripes"). She brings this suit seeking equitable, declaratory, and legal relief after Defendants terminated her for telling the public the truth: That Defendants were working to undermine Stripes' editorial independence as part of a broader effort to control and neuter the mainstream media's ability to report on matters of national security and public interest.

3.  As Ombudsman for Stripes, Ms. Smith's term of employment was not set to end until December 2026.

4.  However, ten (10) days after publishing an opinion column in Stripes that criticized Defendants for their official actions, she was notified that her employment would be terminated many months before the end of her term.

5.  Because of her classification as the employe of a nonappropriated fund instrumentality ("NAFI"), Ms. Smith does not enjoy the protections of the Civil Service Reform Act. Instead, she is at the mercy of the very people who retaliated against her and without any administrative remedy.

6.  For that reason, Ms. Smith is forced to come before this Court and seek redress for the wrongs done to her.

### Parties, Jurisdiction, and Venue

7.  Ms. Smith is a natural person and resident of Connecticut. She began her three-year term as the Ombudsman of Stripes in December 2023 and was terminated from that position effective April 28, 2026.

8.    Defendant U.S. Department of Defense ("DoD") is a federal agency of the United States.

9.    Defendant Pete Hegseth is the Secretary of the U.S. Department of Defense. He is sued in his official capacity.

10.    Defendant Stephen Feinberg is the Deputy Secretary of the U.S. Department of Defense. He is sued in his official capacity.

11.    Defendant Sean Parnell is the chief spokesman for the U.S. Department of Defense and Assistant to the Secretary of Defense for Public Affairs. He is sued in his official and individual capacities.

12.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, because the claims arise under federal law, including the First Amendment to the U.S. Constitution.

13.    The Court has authority to enter a declaratory judgment and to provide preliminary and/or permanent injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, 28 U.S.C. §§ 2201–2202, the All Writs Act, and the Court's inherent equitable powers.

14.    Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e)(1)(A) and (B) because at least one Defendant resides in this District, and a substantial part of the events or omissions giving rise to the claim occurred within this District.

3

15.     As alleged herein, Plaintiff is a NAFI employee and was therefore not allowed to file any appeal with the MSPB. Plaintiff also could not avail herself of internal DoD appeals procedures because of the way her termination was classified.

16.     Therefore, Plaintiff had no administrative remedies she was required to exhaust before filing this suit.

### *Stars and Stripes*

17.     Until this year, Stripes had a proud, long history of serving those who serve through unbiased, objective journalism.

18.     Stripes publication dates to 1861 in the Civil War; it was reinstated in 1918 during World War I and since 1945 during World War II has published continuously. It provides news to service members and their families, as well as veterans, DoD civilians and contractors. Importantly, Stripes provides these services to personnel stationed overseas who may have a harder time accessing unbiased news reporting.

19.     Stripes exists pursuant to DoD Instruction 1015.15, "Establishment, Management, and Control of Nonappropriated Fund Instrumentalities and Financial Management of Supporting Resources."

20.     DoD Instruction 1015.15 makes clear that Stripes should be operated without editorial interference from DoD or political leadership, except in narrow situations involving danger to service members or national security. As stated by that Instruction:

> Editorial policies and practices of the STARS AND STRIPES shall be in accordance with journalistic standards governing U.S. daily commercial

4

newspapers of the highest quality, with emphasis on matters of interest to the STARS AND STRIPES readership. Except as provided in paragraph 4.5., below, the DoD policy for the STARS AND STRIPES is that there shall be a free flow of news and information to its readership without news management or censorship. The calculated withholding of unfavorable news is prohibited.

21.    Following World War I, Stripes continued to operate without interference through World War II, the Korean War, and Vietnam.

22.    However, in the 1980s, DoD officials interfered with Stripes' coverage of the Iran-Contra Affair. Following that interference, Congress mandated that Stripes be editorially independent and created the position of Ombudsman to monitor the situation and report to Congress at least once a year.

23.    It was this critical position at Stripes that Ms. Smith applied for in 2023.

## Ms. Smith is Selected as Ombudsman

24.    Ms. Smith has dedicated her forty-year career to journalism.

25.    She began as a freelance journalist in Connecticut, moving from that job into various reporting roles.

26.    Eventually, Ms. Smith was promoted into editorial and management roles where she ran newsrooms. She also became a columnist for Hearst Connecticut Media.

27.    As an award-winning journalist in Connecticut, Ms. Smith covered stories dealing with national defense, specifically as it pertained to submarine construction.

28.    In 2023, Ms. Smith learned of the opening for the position of Ombudsman for Stripes and submitted her application in August.

29.    Following a strenuous vetting and interview process involving almost twenty (20) other candidates, Ms. Smith was offered the job.

30.    The job offer came from the DoD Media Activity, which is overseen by the Assistant to the Secretary of Defense for Public Affairs.

31.    On December 12, 2023, Ms. Smith officially accepted DoD's offer to work as Stripes' Ombudsman. After passing a federal background check, she received security clearance. Her first day was December 19, 2023.

32.    The Ombudsman position was classified as "NF-0301-5, Remote Job." This meant the position was with a NAFI and that Ms. Smith was a "flexible employee."

33.    As the name suggests, NAFIs are government agencies that are not appropriated funds by Congress for their operation. Instead, NAFIs are funded by the agency's own profits. A prominent example is the Army and Air Force Exchange Service (AAFES), which operates post exchanges on Army and Air Force installations.

34.    Unlike other civil servants, NAFI employees do not have recourse to protections provided by the Civil Service Reform Act, such as appealing adverse employment decisions to the MSPB. *See* 5 U.S.C. § 2105(c); *Clark v. Merit Sys. Prot. Bd.*, 361 F.3d 647, 651 (Fed. Cir. 2004).

35.    NAFI employees with Stripes wishing to appeal a decision are instead governed by DoD procedures. DoD Instruction 1400.24, Volume 1471, Encl. 3, Section 22, requires each service component to develop and promulgate appeal and grievance procedures for NAFI employees.

36.    Stripes NAFI employees fall under the purview of Army Regulation 215-3.

37.    AR 215-3 states that NAFI employees who are classified as "flexible" and have been employed less than three years have no appeal rights for their termination.

38.    Ms. Smith's term as Ombudsman was her only job with DoD.

39.    Ms. Smith's position as Ombudsman was for a three-year term, which was set to expire in December 2026. Because she was terminated before the three-year mark, and per AR 215-3, there were no DoD administrative remedies available to her short of filing suit.

### DoD's Efforts to Control Stripes

40.    As Ms. Smith would later say in her columns, reports, and interviews, Defendants were working to undermine the long-standing independence of Stripes.

41.    On January 15, 2026, Defendant Parnell posted the following from his X account:

> The Department of War is returning Stars & Stripes to its original mission: reporting for our warfighters.
>
> We are bringing Stars & Stripes into the 21st century. We will modernize  its operations, refocus its content away from woke distractions that syphon morale, and adapt it to serve a new generation of service members.
>
> Stars & Stripes will be custom tailored to our warfighters. It will focus on warfighting, weapons systems, fitness, lethality, survivability, and ALL THINGS MILITARY. No more repurposed DC gossip columns; no more Associated Press reprints.
>
> Stars & Stripes has a proud legacy of reporting news that's important to

our service members. The Department of War is committed to ensuring the outlet continues to reflect that proud legacy.

42.     The day before Defendant Parnell made his post criticizing Stripes as "woke," the Washington Post reported that applicants for jobs at Stripes were being asked what they would do to support President Donald  Trump's policies. *See* Liam Scott, S*tars and Stripes job applicants are asked if they back Trump policies*, Wash. Post (Jan. 14, 2026), https://perma.cc/U6NW-3J5D.

43.     On January 15, 2026, the same day as Defendant Parnell's post on X, DoD rescinded the federal regulations protecting Stripes' editorial independence. Stars and Stripes Media Organization, 91 Fed. Reg. 1,706-01 (Jan. 15, 2026).

44.     Those regulations had been in place since April 22, 1994. *Id.* at 1,706.

45.     The regulations were rescinded without affording any opportunity for public comment.[1]

46.     Consistent with these initial moves against Stripes, on March 9, 2026, Defendant Feinberg published a memorandum on behalf of the DoD (the "March 9 Memo").

47.     The March 9 Memo was addressed to "SENIOR PENTAGON LEADERSHIP[,] COMMANDERS OF THE COMBATANT COMMANDS[,] DEFENSE AGENCY AND DOW FIELD ACTIVITY DIRECTORS." The Subject was "Modernization of Stars and Stripes Operations."

---

[1] The procedural issues with DoD's repeal of the 1994 regulations are the subject of a separate suit currently pending before this Court, *Dardarian et al. v. Dep't of Def. et al.*, 1:26-cv-01965 (D.D.C.).

8

48. The March 9 Memo:

    a. Directed that Stripes would no longer "serve as a reprint vehicle for commercial news publication that are otherwise readily accessible[]";

    b. Directed the Assistant Secretary of [Defense] for Public Affairs to update DoD policies in accordance with the March 9 Memo; and

    c. Published interim policy and procedural guidance.

49. The policy guidance included with the March 9 Memo made several changes to existing policies, including that:

    a. "Stripes briefings or reports to and non-newsgathering engagements with Congress must be coordinated beforehand" with DoD leadership;

    b. "Stripes may not present its own editorial position, and its personnel may not use Stripes news coverage to advance an editorial position, point of view, or particular interest[]";

    c. "Stripes content must be consistent with good order and discipline of the military[]"; and

    d. "Stripes is **prohibited**[2] from purchasing or contracting for news stories, features, syndicated columns, comic strips, and editorial cartoons from commercial news media services or sources due to

---

[2] The word "prohibited" is bolded in the original.

9

the digital availability of such content globally," unless DoD leadership granted an exception.

50. The policy guidance in the March 9 Memo also made several changes to Stripes' Ombudsman position, including that the Ombudsman must submit all reports intended for Congress through DoD leadership.

51. Defendants' changes to Stripes' governance and operation gained the attention of several members Congress.

52. On April 8, 2026, Senators Warren, Blumenthal, Duckworth, Gallego, Hirono, and Kelly, all of the Senate Armed Services Committee, wrote a letter to Defendant Feinberg seeking an explanation for DoD actions to "attempt to undermine the editorial independence and First Amendment protections of *Stars and Stripes*."

53. On April 15, 2026, Representative Jamie Raskin and thirty-eight (38) of his peers wrote a similar letter to Defendant Hegseth expressing their concern about DoD changes related to Stripes.

**Ms. Smith Speaks Out Against DoD's Efforts**

54. It was against this backdrop that Ms. Smith published the column that led to her termination.

55. On April 8, 2026, Ms. Smith published a column in Stripes entitled "*Stars and Stripes readers insist: Bring back our color comics!*" (the "April 8 Column") (attached as **Exhibit 1** to this Complaint).

56. Ms. Smith noted that the April 8 Column was her opinion and not the position of Stripes.

57.     In the April 8 Column, Ms. Smith decried the recent efforts by DoD to undermine Stripes' editorial independence, making several statements accusing DoD of attempting to censor an independent news source.

58.     The April 8 Column started on a critical note: "Pete Hegseth doesn't want you to see cartoons in this newspaper anymore. And loyal readers of Stars and Stripes are hopping mad."

59.     From there, it continued, in no uncertain terms, to criticize DoD leadership for their efforts to undermine Stripes.

60.     Ms. Smith explained that the loss of comics was happening "within the broader context of the Pentagon attempting to restrict the mainstream media," including:

   a. Closing off areas of Pentagon to journalists without a DoD escort; and

   b. Requiring journalists to sign an agreement "essentially saying it would not use any information not authorized by the department."

61.     Ms. Smith explained the broader trend was now impacting Stripes, as evidenced by the January 15, 2026 social media post by Defendant Parnell on X, and the March 9 Memo.

62.     Ms. Smith opined that these changes were, from her viewpoint, "censorship, an infringement on Stripes' editorial independence."

63.     Ms. Smith closed the April 8 Column with this:

11

"One of the readers objecting to the loss of 'Beetle Bailey' and 'Garfield' and all the other comic strips in Stripes wondered if anyone was reading their comments. Yes, I have read them and so has Stripes leadership as well as the Publisher's Advisory Board comprised of journalism executives from around the country.

Pentagon leadership, which can do something about it, ought to read them, too."

### Ms. Smith is Terminated

64. Ten days after publishing the April 8 Column, Ms. Smith was terminated.

65. On April 21, 2026, Stripes' Publisher, Max Lederer, notified Ms. Smith that her employment would be terminated immediately, as instructed by Parnell. However, her termination was actually effective as of April 28, 2026.

66. Mr. Lederer texted Ms. Smith and said they needed to talk. Mr. Lederer then showed Ms. Smith the termination form he had been provided by Defendant Parnell.

67. As Assistant to the Secretary of Defense for Public Affairs, Mr. Parnell was responsible for the oversight and operation of Stripes.

68. Ms. Smith's term as Ombudsman was originally scheduled to continue until December 2026.

69. Ms. Smith was not given a reason for her termination.

70. Ms. Smith had not had any negative performance reviews, reprimands, or job performance issues.

71. The termination notice came ten (10) days after the April 8 Column.

72. Ms. Smith was provided DA Form 3434, February 1989 edition, stating that:

    a. The personnel action was being taken pursuant to Army Reuglation 215-3, Chapter 2-19b;

    b. That the action was "without prejudice and [did] not preclude the employee from being hired by another NAFI activity"; and

    c. That the action was "not grievable."

73. Ms. Smith's term as Ombudsman was supposed to continue until December 19, 2026, almost eight more months.

74. Ms. Smith's term as Ombudsman could also have been extended beyond the three-year term.

75. Ms. Smith sincerely enjoyed her work as Stripes' Ombudsman and wished to continue in that role.

76. Since her termination, Ms. Smith has suffered financial and emotional damages.

**FIRST CLAIM FOR RELIEF**
**(First Amendment Retaliation against DoD and All Individual Defendants in Their Official Capacities)**

77. The allegations in paragraphs 1 through 76 are incorporated by reference.

78. The First Amendment protects Ms. Smith's right to free speech, including the right to express different viewpoints without retaliation, punishment, or deterrence based on those viewpoints and beliefs.

79.    Defendants terminated Ms. Smith less than two weeks after she published the April 8 Column, which was highly critical of Defendants and their actions.

80.    Defendants' actions in terminating Ms. Smith's employment violate the First  Amendment by selectively targeting for retaliation specific forms of expression based on content and viewpoint, and by seeking to punish Ms. Smith for engaging in speech disfavored by the government.

81.    Defendants' actions have the purpose and effect of direct and indirect censorship and both content-based and viewpoint-based discrimination against Plaintiff.

82.    Defendants' actions were severe enough to deter a person of ordinary firmness in Plaintiff's position from speaking again.

83.    Defendants' actions have already and will continue to chill Ms. Smith's freedom of speech and expression.

84.    As a direct and proximate result of Defendants' actions, Ms. Smith has suffered financial, emotional, and other types of harm.

85.    Ms. Smith seeks reinstatement for the remainder of her term as Ombudsman as well as an order directing that she be awarded backpay from April 29, 2026, to the date of her reinstatement.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

86.    The allegations in paragraphs 1 through 85 are incorporated by reference.

14

87. Ms. Smith is entitled to declaratory relief under 28 U.S.C. §§ 2201 and 2202.

88. There is an actual controversy within this Court's jurisdiction, and a declaration of rights necessary to remedy continuing harm resulting from Defendants' wrongful termination of Ms. Smith, the Ombudsman of Stripes.

89. Ms. Smith seeks a declaration from the Court that her termination was an act of unconstitutional retaliation and ordering her reinstated Stripes' Ombudsman for the remainder of her term.

## THIRD CLAIM FOR RELIEF
### (*Bivens* Claim against Individual Defendant Parnell in His Individual Capacity)

90. The allegations in paragraphs 1 through 89 are incorporated by reference.

91. Ms. Smith seeks legal damages from Defendant Parnell in his individual capacity pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

92. Ms. Smith was terminated from her job as Ombudsman because she expressed her opinions about Defendants' efforts to undercut Stripes' independence.

93. Ms. Smith was therefore denied her constitutional right to speak freely about public figures and matters of public concern without retribution.

94. Upon information and belief, Defendant Parnell was personally and directly involved in the decision to terminate Ms. Smith.

95. As Mr. Lederer told Ms. Smith, the DA Form 3434 termination notice came from Defendant Parnell.

96. Because Ms. Smith was a NAFI employee, she did not have recourse to the civil service protections afforded other federal employees, and there are no other statutory remedies available to her.

97. There are also no special factors cautioning hesitation in awarding Ms. Smith the relief she requests.

98. As a result of Defendant Parnell's actions, Ms. Smith has suffered financial and emotional damages.

99. Defendant Parnell's actions were the direct and proximate cause of Ms. Smith's damages.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

100. The allegations in paragraphs 1 through 99 are incorporated by reference.

101. But for the illegal acts of Defendants, Plaintiff would still be serving as Ombudsman of Stripes, a job she worked hard to get and wished to keep.

102. As alleged above, Defendants terminated Ms. Smith for exercising her own First Amendment rights.

103. Because Ms. Smith's term was set to expire in December 2026, it is possible her original term may expire before this matter is resolved.

104. Legal remedies are unavailable against Defendant DoD and individual Defendants in their official capacities.

16

105.    Legal remedies are also inadequate, in that Ms. Smith wishes to finish her work at Stripes.

106.    Therefore, Plaintiff respectfully asks the Court to grant her preliminary and/or permanent injunctive relief and order Defendants to re-instate her to the position of Ombudsman until the conclusion of her term.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial on all issues so triable.

WHEREFORE, Plaintiff respectfully prays that this Court:

1.    Enter judgment for Plaintiff and against Defendants on all claims;

2.    Grant injunctive relief, ordering Defendants to reinstate Ms. Smith to her position, title, and job description held at Stripes for the remainder of her term;

3.    Enter a declaratory judgment under 28 U.S.C. § 2201 and 28 U.S.C. § 2202 that Defendants violated Ms. Smith's constitutional rights and that she should be reinstated;

4.    Grant Ms. Smith her reasonable attorneys' fees as allowed by law; and

5.    Grant such other relief as the Court may deem just and proper.

[Signatures on next page.]

17

Respectfully submitted this, the 25th day of June 2026.

/s/ John Bussian

John Bussian
  N.C. State Bar No. 15487
  jbussian@aol.com
THE BUSSIAN LAW FIRM PLLC
150 Fayetteville Street
Suite 1700
Raleigh, NC 27601
Tel: 919.306.3319
Fax: 919.839.0304

*Pro Bono Attorney for Plaintiff*

18