UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE R. SMITH,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF DEFENSE, et al.<br><br>Defendants. | Civil Action No. 26-2248 (APM) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

Because Plaintiff spoke in her government role and against government initiatives that she was tasked with helping to implement, Plaintiff's First Amendment retaliation suit fails as alleged. Both parties agree that to succeed on her First Amendment claims, Plaintiff "must show: '(1) she spoke as a citizen on a matter of public concern[] [and] (2) her interest in commenting on matters of public concern outweighed the government's interest in promoting the efficiency of the public services it performs through its employees . . . ." *Slavin v. Parnell*, Civ. A. No. 26-3009 (TNM), 2026 WL 2620990, at *3 (D.D.C. Sept. 4, 2026) (quoting *Johnson v. District of Columbia*, 182 F.4th 1052, 1058 (D.C. Cir. 2026)).[1] This case arises out of the termination of Plaintiff as Ombudsman of Stars and Stripes ("Stripes"), a government-owned newspaper, after she published a column on April 8, 2026, critical of Defendants' efforts to modernize Stripes. Defendants had tasked Plaintiff with helping with those modernization efforts, which included adapting Stripes to

[1] As noted in their initial motion, Defendants do not contest the other *Pickering* factors at this stage. ECF No. 12 at 8, n.4.

the digital age of media where U.S. news is available globally. Here, even accepting Plaintiff's allegations as true, Plaintiff spoke as the Ombudsman in the April 8 column. And, even if she did not, the column's content shows that she opposed the modernization efforts she was tasked with helping Defendants implement. Her suit fails for these reasons.

Plaintiff cannot escape the fact that, by her own admission, Plaintiff was speaking as Ombudsman when she wrote the column at issue. In the April 8 column, she referred to it as an "ombudsman column[]" and spoke "from [her] viewpoint as ombudsman." April 8 column, ECF No. 6-2 at 35. In a follow up column on April 23, 2026, she referred to the April 8 column as "[a] recent opinion column I wrote as the Stars and Stripes ombudsman." Jacqueline Smith, Op-Ed, *Ombudsman column: The Pentagon is trying to silence me*, Stars & Stripes (Apr. 23, 2026), https://www.stripes.com/opinion/2026-04-23/stripes-former-ombudsman-pentagontrying-to-silence-21465037.html ("April 23 Column"). Plaintiff also stated in a press interview on April 24, 2026, that her April 8 column was made pursuant to her job duties. During a CNN interview, when discussing her column, she stated, "it was my job to inform when I think there that are threats to the editorial independence, so I was doing my job, speaking out about it, letting people hear about it, and they can decide whether it was acceptable, and especially Congress." *Stars and Stripes Ombudsman Fired at Pentagon*, CNN (Apr. 24, 2026), https://www.cnn.com/2026/04/24/politics/video/ebof-stars-and-stripes-ombudsman-fired-pentagon-kate-bolduan (relevant portion of her statement at approximately 3:05 to 3:35). She now argues what she wrote was as a citizen, and not the Ombudsman. This is incorrect.

Even looking past Plaintiff's own admissions, Plaintiff now concedes that the content of her column was a part of her job responsibilities: the "April 8, 2026 column (the 'April 8 Column') addressed the Department of Defense's (the 'Department') alleged interference with the editorial

independence of Stars and Stripes ('Stripes')—the independence that her position as Ombudsman was intended to protect." Pl.'s Reply Br., ECF No. 13, at 2. And Plaintiff further admits in her reply that the Ombudsman's responsibilities included "provid[ing] an independent assessment of Stripes' editorial practices" and she was terminated for what she wrote in the assessment. Pl.'s Reply Br. at 3. Assessments performed pursuant to official job duties are not protected by the employee-speech doctrine. Motion to Dismiss, ECF No. 12, at 9-10 (collecting cases); *Garcetti v. Ceballos,* 547 U.S. 410, 421-22 (2006) ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created."). Moreover, Plaintiff wrote the April 8 column in her role as reader representative. In addition to providing her own position on Defendant's modernization efforts, Plaintiff collected reader sentiments shared with Stripes and then provided her responses to their feedback. *See* April 8 column. Plaintiff, in her first column as Ombudsman, referred to her role as Ombudsman as the "reader representative" and stated that "[i]f [readers] have questions about coverage, I will try to find the answers." Jacqueline Smith, Op-Ed, *Launching an effort to protect, check Stars and Stripes*, Stars & Stripes (Jan. 12, 2024), https://www.stripes.com/opinion/2024-01-12/ombudsman-check-and-protect-stripes-12635941.html ("January 12 Column"); ECF No. 12-1 (Ombudsman Position Description). This is precisely what Plaintiff purported to do in the April 8 column. Finally, Plaintiff effectively spoke from her office by publishing the April 8 column in Stripes' opinion section under her byline as Stripes' Ombudsman and using her Stripes email address. ECF No. 6-2 at 34. Thus, she spoke as Ombudsman and pursuant to her official duties when she wrote the April 8 column and so her speech was employee speech not protected by the First Amendment.

Plaintiff's arguments that the April 8 column was private speech cherry-pick facts and ignore the fuller context of the column. Plaintiff principally contends that the column was private speech because the modernization memorandum[2] "expressly prohibits the kind of speech made by Ms. Smith." Pl.'s Reply Br. at 4. But even if true,[3] this fact does not cut Plaintiff's way; often employees are terminated for speaking from their offices when they are not authorized to do so. Motion to Dismiss at 9-10 (collecting cases). And Plaintiff "offer[s] no authority constricting the scope of official duties only to those activities an employee is ordered to perform. Indeed, the case law is against [her] on this." *Slavin*, 2026 WL 2620990, at *6 (collecting cases). Plaintiff further argues that the column was not employee speech because she "was not speaking to her assigned audiences: Congress and Department leadership." Pl.'s Reply Br. at 6. This is contrary to Plaintiff's own labelling of her role as "reader representative." January 12 Column. But even if readers were her primary audience, the column collects reader feedback and then ends with a statement addressed to Department leadership: "Pentagon leadership, which can do something about it, ought to read them, too." April 8 Column. That she chose to share her thoughts publicly does not change that her intended audience included Department leadership. And, even if Plaintiff was not speaking directly to Department leadership, "a public employee speaks without First Amendment protection when [s]he reports conduct that interferes with h[er] job responsibilities, even if the report is made outside h[er] chain of command." *Winder v. Erste*, 566 F.3d 209, 215

[2] The modernization memorandum in effect at the time of termination has since been incorporated and canceled by DoW Instruction 5122.11, *Stars and Stripes Media Organization*, Aug. 21, 2026.
[3] Defendants dispute that the modernization memorandum "expressly prohibits" the speech at issue. The guidance Plaintiff cites, section 2.a.(2)(b), pertains to "Stripes Functions and Products" and prohibits its personnel from "us[ing] Stripes news coverage to advance an editorial position, point of view, or particular interest." However, Plaintiff's speech was not news coverage; it appeared on Stripes' opinion page.

(D.C. Cir. 2009). Thus, Plaintiff's arguments that she was not speaking as Ombudsman are unpersuasive.

The fact that Plaintiff was speaking from her role as Ombudsman should end the case. But even if it does not, the balance of interests favors the Department's decision to terminate her. Motion to Dismiss at 13-14. Plaintiff was tasked with advising Department leadership on "Stripes audience interests or concerns and journalistic and editorial practices to aid Stripes in" the modernization efforts. Modernization Memorandum, ECF No. 6-2 at 18 (section 4.b). Plaintiff does not dispute she was assigned such responsibilities. Pl.'s Reply Br. at 4. However, Plaintiff opposed those modernization efforts in the column. *See* April 8 Column. Thus, the Department's interest as an employer and overseer of Stripes outweighs Plaintiff's alleged interest in serving as Ombudsman while opposing, rather than aiding, Department initiatives.

Finally, Plaintiff's remaining arguments are unpersuasive. Plaintiff suggests that her *Bivens* claim against Parnell should still survive but ignores that the *Bivens* claim is based on her alleged violation of First Amendment rights. Pl.'s Reply Br. at 14; Compl., ECF No. 3-1, ¶¶ 92-93. However, Defendants have shown her speech was unprotected and so her claim against Parnell cannot stand alone.

Further, Plaintiff fails to provide a legitimate rationale for the emergency nature of the relief or her own four-month delays in seeking a preliminary injunction. ECF No. 12 at 14-17. Plaintiff establishes no right to her position, *id.*, and even concedes she lacked any statutory protection for her role, Compl. ¶¶ 32, 34, 37. Further, besides her desire to obstruct the Department's modernization efforts as ombudsman, it is unclear what harm she will suffer as an individual. And while she now insists she will suffer harm absent emergency relief, she was more

tempered about her dismissal in April: "Ironically, my three-year term would have expired at the end of this year anyway. They couldn't wait." April 23 Column.

There is also no need for an evidentiary hearing with live witness testimony. *See* Pl.'s Reply Br. at 1. The material fact–that Plaintiff was fired for her April 8 Column–is not in dispute for purposes of this motion, ECF No. 12 at 8 n.4, and the content of that column speaks for itself. Further, permitting live witness testimony, particularly from new witnesses like Mr. Lederer, violates Local Civil Rule 65.1(c)'s requirement that "[t]he application shall be supported by all affidavits on which the plaintiff intends to rely."

For the reasons set forth above, the Court should deny Plaintiff's motion for a preliminary injunction, dismiss Plaintiff's complaint, and enter judgment in Defendants' favor.

Dated: September 21, 2026

Respectfully submitted.

By: */s/ Zachariah Lindsey*
ZACHARIAH LINDSEY, Bar #1766679
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Telephone: (202) 252-6612
Zachariah.Lindsey@usdoj.gov

*Counsel for Defendants*