**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JACQUELINE R. SMITH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**U.S. DEPARTMENT OF DEFENSE,** ***et al.*****,**<br><br>**Defendants.** | **Case No. 26-cv-02248 (APM)** |

**MEMORANDUM OPINION AND ORDER**

**I.**

*Stars and Stripes* is a daily publication that operates within the U.S. Department of Defense (DoD) and whose primary audience is members of the United States military. Until recently, Plaintiff Jacqueline Smith served as the paper's Ombudsman. Compl., ECF No. 1, ¶¶ 1, 65. On April 8, 2026, she wrote a column appearing in the opinion pages of *Stars and Stripes* titled, "Stars and Stripes readers insist: Bring back our color comics!" ("April 8 Column"). Pl.'s Mot. for Prelim. Inj., ECF No. 6 [hereinafter Pl.'s Mot.], Ex. 1, ECF No. 6-2 [hereinafter Smith Decl.], at 34–36 [hereinafter Column].[1] The April 8 Column most directly criticized a new DoD policy prohibiting *Stars and Stripes* from publishing comic strips and other syndicated material. But Plaintiff admits that the column had a larger purpose: to "decr[y] the efforts by DoD to undermine Stripes' editorial independence and the free press generally" and to "accus[e] DoD of attempting to censor an independent news source." Smith Decl. ¶ 32. Less than two weeks later,

[1] Because Plaintiff filed her exhibits in a single PDF, citations to exhibits are to the CM/ECF page number.

on April 21, 2026, Plaintiff received notice of her termination, which would become effective one week later. *Id.* ¶ 35.

Plaintiff filed this suit in late June 2026, asserting as her primary claim that DoD unlawfully terminated her in retaliation for her protected First Amendment expression. *See* Compl. ¶¶ 86–89. Two months later, on August 21, 2026, Plaintiff sought preliminary relief that would reinstate her as Ombudsman through the end of her original term, December 19, 2026. *See* Pl.'s Mot. That motion is now before the court. So, too, is a Motion to Dismiss. *See* Defs.' Opp'n to Pl.'s Mot. and Mot. to Dismiss, ECF No. 12 [hereinafter Defs.' Mot.], at 18. On September 24, 2026, the court took testimony from one witness called by Plaintiff, Max Lederer, *Stars and Stripes*' most recent publisher, and heard argument on the motions. *See* Hr'g Tr. (draft).

As discussed further below, the court denies the request for injunctive relief because Plaintiff has failed to demonstrate that she is "likely to succeed on the merits." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The court, however, denies the motion to dismiss.

**II.**

The parties agree that Plaintiff's retaliation claim is governed by the framework established in *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See* Pl.'s Mot, Pl.'s Mem. in Support of Pl.'s Mot., ECF No. 6-1 [hereinafter Pl.'s Mem.], at 14–15; Defs.' Mot. at 7–8. Under that framework, a public-sector-employee plaintiff must show that: "(1) she spoke as a citizen on a matter of public concern; (2) her interest in commenting on matters of public concern outweighed the government's interest in promoting the efficiency of the public services it performs through its employees; (3) her speech was a substantial or motivating factor in prompting the retaliatory or punitive act; and (4) she can refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech." *Johnson v. Dist. of*

*Columbia*, 182 F.4th 1052, 1058 (D.C. Cir. 2026) (describing *Pickering* factors) (cleaned up). The crux of the parties' dispute centers on the first factor—whether in the April 8 Column Plaintiff spoke "as a citizen"[2] or as a DoD employee of *Stars and Stripes*.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The "official duties" inquiry is a "practical one," *id.* at 423–24, that requires courts to evaluate "whether the speech at issue is itself ordinarily within the scope of an employee's duties . . . ," *Lane v. Franks*, 573 U.S. 228, 240 (2014). Courts must "take a hard look at the context of the speech" in making that assessment. *Mpoy v. Rhee*, 758 F.3d 285, 292 (D.C. Cir. 2014) (quoting *Decotiis v. Whittemore*, 635 F.3d 22, 32 (1st Cir. 2011)).

Plaintiff has not carried her burden to show that she authored the April 8 Column "as a citizen," as opposed to the *Stars and Stripes* Ombudsman. Start with the Ombudsman job description. The publication's Ombudsman, among other things: (1) "Protects the Stars and Stripes' First Amendment rights and its ability and obligation to provide a free flow of news and information to the DoD military community"; (2) "[e]nsures that the news published by Stars and Stripes serves the audiences' information needs by being their representative"; (3) "[d]evelops a dialogue with the readers and promptly responds to their concerns and questions about Stars and Stripes journalism"; and (4) "[w]rites special columns, blogs, etc. for publication by Stars and Stripes regarding readers' concerns about Stripes journalism, editorial integrity, editorial journalism operations, the news organization's mission and general journalistic issues." Defs.' Mot., Ex. A, ECF No. 12-1 [hereinafter Job Description], at 1. Plaintiff echoed those

[2] Defendants do not dispute that Plaintiff spoke on "a matter of public concern." *Johnson*, 182 F.4th at 1058; *see generally* Defs.' Mot.

responsibilities in a column that she wrote shortly after starting as Ombudsman. There, she described her job as "to protect the First Amendment rights and independence of this news organization, to work at ensuring the news [readers] receive is free from interference or censorship while monitoring the accuracy, fairness and impartiality of the reporting."[3] She also noted that as the "reader representative" she "[would] write occasional columns about journalistic issues." *Id.*

The April 8 Column falls squarely within the Ombudsman's "employment duties." *Garcetti*, 547 U.S. at 424. Put simply, Plaintiff "wrot[e] [a] special column" addressing readers' "concerns and questions about Stars and Stripes journalism" and its "editorial integrity, editorial journalism operations, the news organization's mission and general journalistic issues." *See* Job Description at 1. True, the April 8 Column ostensibly was about the new no-comic-strip policy, but even Plaintiff admits that it had a broader purpose of criticizing DoD leadership's recent encroachment on the paper's "editorial independence" and "attempt[s] to censor an independent news source." *See* Smith Decl. ¶ 32. Writing on those subject matters was part of her job as Ombudsman.

Next, consider context. The April 8 Column's byline identifies Plaintiff by her job title, "Stars and Stripes Ombudsman." *See* Column at 34. Underneath the byline is an image of the Sunday comics published in the paper, immediately followed by a note to readers: "*Contact Stars and Stripes ombudsman Jacqueline Smith at ombudsman@stripes.com*." *Id.* The Column's text groups itself with "[a]ll of [her] ombudsman columns." *Id.* at 35. And if all that were not enough, Plaintiff admitted twice afterward that she wrote the April 8 Column in her professional capacity. In an opinion piece published in *Stars and Stripes* on April 23, 2026, Plaintiff described the

[3] *See* Jacqueline Smith, "Launching an Effort to Protect, check Stars and Stripes," *Stars and Stripes*, Jan. 12, 2024, https://www.stripes.com/opinion/2024-01-12/ombudsman-check-and-protect-stripes-12635941.html [https://perma.cc/G4ZG-YHK8].

April 8 Column as "[a] recent opinion column [she] wrote as the Stars and Stripes ombudsman . . . ."[4] The next day, she appeared on CNN and said in reference to the Column, "it was my job to inform when I think that there are threats to the editorial independence, so I was doing my job . . . ."[5] Plaintiff's own words thus corroborate what the Column itself makes apparent. She wrote it in her capacity as *Stars and Stripes*' Ombudsman, not as a private citizen.

Plaintiff makes several arguments to resist this conclusion. She points out that she "did not seek any permission to publish [the April 8 Column], its content was not reviewed prior to publication, and nobody at Stripes or the Department asked her to write it." Pl.'s Combined Reply Br. in Supp. of Prelim. Inj. and Opp'n to Mot. to Dismiss, ECF No. 13 [hereinafter Pl.'s Reply], at 6. But such independence is entirely consistent with the position of Ombudsman. *See* Job Description at 1 (setting out that the Ombudsman "[f]ormulates opinions independently and without direction from the Stars and Stripes news media organization and the Department."). Plaintiff dismisses the importance of the job description, arguing that it is "not determinative." Pl.'s Reply at 3 (citing *Thompson v. Dist. of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008) (observing that the official duties inquiry does not focus "on formal job descriptions, but on the employees' actual responsibilities")). Fair enough, but that does not mean a job description is not relevant evidence. While it may be true that formal job descriptions "often bear little resemblance to the duties [of] an employee," *Garcetti*, 547 U.S. at 424, here, Plaintiff's job description mapped perfectly onto at least one part of her role—publishing columns about reader concerns and general journalistic issues. Even Plaintiff's own witness admitted that writing such articles was part of her

---

[4] *See* Jacqueline Smith, Ombudsman column: The Pentagon is trying to silence me, *Stars and Stripes*, Apr. 23, 2026, https://www.stripes.com/opinion/2026-04-23/stripes-former-ombudsman-pentagon-trying-to-silence-21465037.html [https://perma.cc/4C5Q-3YK6].

[5] Erin Burnett Out Front, Stars and Stripes says she was fired after criticizing Hegseth, CNN, Apr. 24, 2026, https://www.cnn.com/2026/04/24/politics/video/ebof-stars-and-stripes-ombudsman-fired-pentagon-kate-bolduan [https://perma.cc/R4M4-BJ6E] (3:05 to 3:35).

"actual responsibilities." *Thompson*, 530 F.3d at 916; *see* Hr'g Tr. at 11:4-18 (describing the Ombudsman as having a "responsibility to interact with the audience," and agreeing that this includes "publishing columns in response to readers' concerns").

Plaintiff also argues that the portion of the Ombudsman's job description that refers to writing "special columns" was superseded by a DoD "Interim Policy and Procedural Guidance," issued on March 9, 2026 ("March 9 Guidance"). The March 9 Guidance both limited the discretion of the publication and its employees to state editorial positions and omitted mention of column-writing or communicating with the general public as among the Ombudsman's job responsibilities. *See* Pl.'s Reply at 3–5; Smith Decl. at 16, 18–19. No doubt the March 9 Guidance reoriented the mission of *Stars and Stripes*, but Plaintiff has not proven that the Guidance stripped the Ombudsman role of column-writing duties. And even if it did diminish the position's editorial component, that alone cannot overcome the powerful contextual clues establishing that Plaintiff wrote the April 8 Column pursuant to her "actual responsibilities."

Plaintiff's heavy reliance on the Circuit's decision in *Johnson v. District of Columbia* is misplaced. *See* Pl.'s Mem. at 17–18. In that case, the plaintiff was a D.C. correctional officer and president of the correctional officers' union who was terminated after giving an interview on a local television station about jail conditions during the COVID-19 pandemic. *Johnson*, 182 F.4th at 1056. That she spoke in her capacity as a citizen was not in dispute. The District "acknowledged that Johnson spoke as a private citizen and addressed a matter of public concern . . ." *Id.* at 1061. For that reason alone, *Johnson* does not help Plaintiff. But even on its facts, *Johnson* is readily distinguishable. There, it was not alleged that Johnson's job involved her giving television interviews about jail conditions or related matters. The opposite is true here. Plaintiff's job responsibilities as Ombudsman included writing articles responding to readers' concerns and

defending the paper's editorial independence. The April 8 Column was consistent with her core responsibilities.

In sum, because Plaintiff has not shown that she wrote the April 8 Column as a private citizen, she has not established, at this stage, that she is likely to succeed on her retaliation claim. Her motion for injunctive relief is denied.

**III.**

So, too, is Defendants' request for dismissal. The court so rules because it questions whether the *Pickering-Garcetti* "official duties" inquiry is appropriate in this unique case. That test is based on a strict dichotomy between speech as a public employee and speech as a private citizen. *See Garcetti*, 547 U.S. at 418. If the plaintiff speaks in an employment capacity, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* If they speak as a private citizen on a matter of public concern, however, "the possibility of a First Amendment claim arises." *Id.* But what if the public employee's job *is* to engage in First Amendment expressive activities? Take a reporter at *Stars and Stripes* who writes a news story that meets with disfavor among DoD leadership. If *Pickering* and *Garcetti* are strictly applied, the reporter acted pursuant to her official responsibilities and therefore enjoys no First Amendment protection from an adverse employment action. That would be an odd result. It would mean the First Amendment is but a hollow promise for *Stars and Stripes* journalists—and perhaps its Ombudsman.

The Court in *Garcetti* recognized the possibility that the "Court's customary employee-speech jurisprudence" may not be the right fit for all public-sector employees. *Id.* at 425. For example, it may not "fully account[]" for "additional constitutional interests" implicated in cases involving "speech related to scholarship or teaching." *Id.* "[A]t least two circuits have found

that *Garcetti* does not apply to . . . teaching and writing activities." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 375 (D.D.C. 2020). And, in *Turner v. U.S. Agency for Global Media*, a judge in this District concluded that "*Garcetti* does not apply to the core editorial or journalistic functions of government-employed journalists." *Id.* at 376; *see also Slavin v. Parnell*, 26-cv-3009 (TNM), 2026 WL 2620990, at *8 (D.D.C. Sept. 4, 2026) (acknowledging that "some government-operated journalistic activities" may be "carve[d]" out from *Garcetti* but distinguishing *Turner* on the facts). *Turner* involved a First Amendment claim brought by a Program Director at Voice of America, the official, publicly funded news outlet of the U.S. government abroad, though the case did not involve the plaintiff's termination. 502 F. Supp. 3d at 341–42, 372–85. The parties have neither addressed the question raised by this court nor meaningfully discussed *Turner*.[6] The court therefore will deny the motion to dismiss without prejudice, and Defendants may renew it if they wish.

Defendants also argue that dismissal is required under the second *Pickering* factor. *See Pickering*, 391 U.S. at 568 (requiring a balancing of the plaintiff's interest in speech against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"). They maintain that DoD "has an interest, as an employer and overseer of Stripes, in the content of Stripes" and "an interest in an Ombudsman that works to fulfill its directives for the paper," and that her firing was appropriate because, through the April 8 Column "Plaintiff indicate[d] she intended to work to undermine the Department's policy and not to support it." Defs.' Mot. at 13–14. Maybe so. But absent additional briefing as to the applicability of *Pickering-Garcetti* to these unique circumstances, the court declines at this time to dismiss based on the second *Pickering* factor.

[6] Plaintiff cites it in passing but for a different proposition. *See* Pl.'s Mem. at 30.

**IV.**

For the foregoing reasons, the parties' motions are denied. If Defendants wish to renew their motion to dismiss, they shall do so by October 20, 2026. Otherwise, they shall answer by that date.

Dated: October 6, 2026

Amit P. Mehta
United States District Judge