IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 1:26-cv-02248-APM

JACQUELINE R. SMITH,

Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE *et al.*,

Defendants.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Jacqueline R. Smith, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, respectfully moves for partial summary judgment on her First Amendment retaliation claim.

The Court's October 6, 2026 Memorandum Opinion and Order (ECF No. 15) identifies the undisputed material facts underlying Plaintiff's claim and, more importantly, identifies a constitutional question that the parties had not adequately addressed: whether the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), categorically excludes First Amendment protection for government-employed journalists whose official responsibilities consist of exercising the very freedoms guaranteed by the First Amendment.

That question was answered by then-Chief Judge Beryl A. Howell in *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 375–76 (D.D.C. 2020). Judge Howell held that the ordinary *Garcetti* rule does not apply to the core editorial or journalistic functions of government-employed journalists.

The reasoning of *Turner* is directly applicable here. Indeed, the facts identified by this Court in its October 6 opinion establish that Plaintiff's challenged expression was undertaken in fulfillment of her central responsibilities as Ombudsman of *Stars and Stripes*: protecting the publication's editorial independence, communicating readers' concerns, and defending its First Amendment freedoms.

Accordingly, Plaintiff seeks judgment that her April 8, 2026 column constitutes speech protected by the First Amendment and, because the undisputed record establishes the remaining elements of retaliation, summary judgment on liability. Alternatively, Plaintiff requests partial summary judgment resolving the constitutional protection afforded her speech under Rule 56(g), leaving any genuinely disputed issues relating to further proceedings.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case presents the precise constitutional difficulty the Court identified in its October 6 opinion: whether the government may terminate the employee of a government-operated newspaper for exercising the editorial independence that her position expressly requires her to protect.

The Court observed that rigid application of *Garcetti* would produce an anomalous result. A journalist employed by *Stars and Stripes* could be dismissed for publishing a truthful report disfavored by Department of Defense leadership, yet have no First Amendment protection precisely because reporting the news was part of the journalist's official duties. This Court questioned whether that result could be reconciled with the First Amendment's protection of press freedom and specifically directed attention to *Turner*. *Smith v. U.S. Department of Defense*, No. 26-cv-02248 (APM), Memorandum Opinion and Order at 7–8 (Oct. 6, 2026), ECF No. 15.

Plaintiff submits that the answer is no.

The constitutional protection recognized in *Turner* is particularly compelling where, as here, the government employee's express responsibilities include protecting the editorial independence of a government-operated news organization from interference by the very government officials who oversee it.

If the government may terminate an Ombudsman for publishing criticism of governmental interference with editorial independence, merely because protecting that independence is part of her job, the First Amendment protection of that independence becomes illusory.

The government cannot magically transform a constitutionally protected journalistic function into unprotected expression merely by placing that function within an employee's official duties. That is the essential teaching of *Turner*. And it is the reason Plaintiff is entitled to judgment on the legal question identified by this Court.

## II. THE UNDISPUTABLE, MATERIAL FACTS IDENTIFIED IN THE COURT'S OCTOBER 6 OPINION

The following undisputed facts are drawn exclusively from the Court's October 6 Memorandum Opinion and Order and the record materials cited in that order by this Court:

**1. Stars and Stripes is a newspaper operated within the Department of Defense.**

*Stars and Stripes* is a daily publication operating within DoD whose primary readership consists of members of the United States military. ECF No. 15 at 1.

**2. Plaintiff served as the newspaper's Ombudsman.**

Plaintiff Jacqueline R. Smith served as Ombudsman of *Stars and Stripes*. Id.

**3. Protecting the publication's First Amendment freedoms and editorial independence was among Plaintiff's express responsibilities.**

The Court identified Plaintiff's official responsibilities as including protection of the newspaper's First Amendment rights, representation of readers' interests, responding to their concerns, and writing columns addressing editorial integrity and journalistic issues. Id. at 3.

**4. Plaintiff was expressly authorized to formulate opinions independently of DoD leadership.**

As this Court observed, the Ombudsman's job description provided that she was to formulate opinions independently and without direction from either *Stars and Stripes* or the Department. Id. at 5; ECF No. 12-1 at 1.

**5. On April 8, 2026, Plaintiff published an opinion column in Stars and Stripes.**

The column, entitled "Stars and Stripes readers insist: Bring back our color comics!", criticized a DoD policy prohibiting publication of comic strips and other syndicated material. ECF No. 15 at 1.

**6. The column addressed the broader question of government interference with editorial independence.**

As this Court also Court recognized, the column's purpose extended beyond comic strips to criticism of DoD's interference with the newspaper's editorial independence and the threat of censorship of an independent news source. Id. at 1, 4.

**7. Plaintiff received notice of termination on April 21, 2026.**

The Plaintiff’s termination was to become effective one week later. Id. at 1–2.

**8. Plaintiff's column was consistent with her central professional responsibilities.**

The Court determined that the April 8 column fell within the scope of the Ombudsman's employment responsibilities, including her duties concerning editorial independence and readers' concerns. Id. at 4–6.

**9. Defendants do not dispute that Plaintiff's expression concerned a matter of public concern.**

The Court expressly identified the absence of a dispute on this issue. Id. at 3 n.2.

**10. The Court expressly questioned whether the ordinary Garcetti rule should govern this case.**

The Court identified the potential application of *Turner* and denied Defendants' motion to dismiss without prejudice, encouraging further briefing of Turner concerning an appropriate constitutional standard. Id. at 7–9.

For purposes of this motion, Plaintiff accepts the Court's determination that she wrote the April 8 column in her professional capacity as Ombudsman. Yet as held by the Turner court, this circumstance does not remove the column from First Amendment protection.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(a), summary judgment is appropriate when the movant establishes that no genuine dispute exists concerning a material fact and that the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A factual disagreement is material only if its resolution could affect the outcome under the governing substantive law.

Where the material facts are undisputed and the controlling question concerns the constitutional standard applicable to those facts, summary judgment provides an appropriate mechanism for resolving that question.

Rule 56(a) expressly permits summary judgment on part of a claim. Rule 56(g) further authorizes the Court to identify material facts that are not genuinely in dispute even when the Court does not grant all the relief requested.

Plaintiff therefore seeks adjudication of the constitutional protection afforded her expression, based on undisputed, material facts previously found by this Court.

## IV. GARCETTI DOES NOT CATEGORICALLY EXCLUDE FIRST AMENDMENT PROTECTION FOR THE CORE JOURNALISTIC FUNCTIONS OF GOVERNMENT-EMPLOYED JOURNALISTS.

In *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), the Supreme Court held that statements made by public employees pursuant to their ordinary official duties generally are not statements made as citizens for purposes of First Amendment protection against employment discipline.

But the Court expressly reserved whether its ordinary public-employee speech doctrine adequately accommodates additional constitutional interests implicated by certain expressive professions, particularly scholarship and teaching. Id. at 425.

That reservation recognizes a critical distinction between ordinary governmental employment and employment whose defining purpose is the production and communication of constitutionally significant expression.

The distinction is especially important in journalism.

A government-employed reporter necessarily performs official duties when gathering and publishing news. A government-employed editor necessarily performs official duties when making editorial judgments. An Ombudsman charged with protecting editorial independence necessarily performs official duties when publicly addressing threats to that independence.

If performance of those responsibilities automatically extinguishes First Amendment protection, the constitutional guarantee of a free press would provide no protection to the very journalists whose work gives that guarantee practical meaning.

That is the problem recognized in *Turner* and expressly identified by this Court.

## V. TURNER RECOGNIZES A FIRST AMENDMENT EXCEPTION FOR CORE EDITORIAL AND JOURNALISTIC FUNCTIONS.

In *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333 (D.D.C. 2020), then-Chief Judge Howell considered First Amendment claims arising from governmental interference with journalists associated with Voice of America and other government-supported news organizations.

Judge Howell recognized that government employment does not necessarily extinguish First Amendment protections when an employee performs core journalistic functions. Drawing upon the Supreme Court's express reservation in *Garcetti* concerning additional constitutional interests, the court concluded that core editorial and journalistic expression by government-employed journalists should be analyzed under *Pickering*, rather than categorically excluded under *Garcetti*. Id. at 375–76. This conclusion rests on the constitutional importance of the press as an independent source of information concerning governmental affairs.

The reasoning applies with particular force to *Stars and Stripes*.

Like Voice of America in *Turner*, *Stars and Stripes* operates with governmental support while performing a journalistic function of substantial public importance. Its readers include military personnel whose access to independent reporting about governmental policies and military affairs serves interests extending far beyond the ordinary employer-employee relationship.

The government's role as publisher and employer cannot, by itself, justify treating all editorial and journalistic expression as constitutionally unprotected government speech. Nor

should the First Amendment protection of such expression depend on whether a reporter or editor undertakes it during or outside ordinary working hours.

The constitutional question is not merely whether the speech falls within the employee's duties. It is whether those duties consist of the very editorial or journalistic activities for which the First Amendment affords special protection.

Under *Turner*, they do.

## VI. PLAINTIFF'S COLUMN FALLS WITHIN THE CORE JOURNALISTIC FUNCTIONS PROTECTED BY TURNER.

The undisputed, material facts identified by this Court establish that Plaintiff's April 8 column concerned precisely the kind of journalistic expression contemplated in *Turner*.

Plaintiff did not merely express disagreement about an internal administrative matter unrelated to her professional responsibilities. She published an opinion column in a newspaper, addressed to its readers, concerning governmental interference with that newspaper's editorial independence.

This Court has identified protection of that independence as one of Plaintiff's central responsibilities.

The April 8 column therefore constitutes an exercise of her journalistic function, not a departure from it.

Indeed, Plaintiff's position presents an especially compelling application of *Turner*.

An Ombudsman exists in part to protect journalistic integrity and represent readers' interests, including when those interests conflict with the preferences of the newspaper's management or governmental overseers. The independence of that position is not incidental to its function. It is essential to it.

A rule permitting the government to discharge an Ombudsman for exercising independent editorial judgment would effectively authorize the government to defeat the position's purpose. Defendants cannot rely upon Plaintiff's responsibility to protect editorial independence as the reason her speech falls outside the First Amendment.

Under *Turner*, the fact that Plaintiff's expression fulfilled that responsibility supports its protection.

## VII. THE APRIL 8 COLUMN ADDRESSED MATTERS OF UNDISPUTED PUBLIC CONCERN.

The first substantive requirement of the *Pickering* analysis, once the categorical *Garcetti* bar is removed, is that the expression address a matter of public concern. *Pickering v. Board of Education*, 391 U.S. 563 (1968); *Connick v. Myers*, 461 U.S. 138 (1983).

As the Court expressly recognized, Defendants do not contest that Plaintiff's column addressed a matter of public concern. ECF No. 15 at 3 n.2.

The subject of the column was not merely a disagreement about newspaper comic strips. It concerned governmental interference with editorial decision-making and the independence of a news organization serving members of the United States Armed Forces. Those issues concern the public's interest in receiving information free from improper governmental censorship.

The content, form, and context of the column therefore establish the public-concern element of the constitutional inquiry.

## VIII. THE PICKERING BALANCE FAVORS PROTECTION OF PLAINTIFF'S JOURNALISTIC EXPRESSION.

Under *Pickering*, the Court must balance Plaintiff's and the public's interests in the protected expression against the government's legitimate interests in the effective performance of its public responsibilities. 391 U.S. at 568.

The government possesses legitimate interests in administering *Stars and Stripes* and establishing lawful policies governing its operations. But those interests must be evaluated in light of the newspaper's journalistic mission and the independence assigned to its Ombudsman.

Defendants argued in their motion to dismiss that DoD possessed an interest in the content of *Stars and Stripes* and in an Ombudsman who would support departmental policy. ECF No. 12 at 13–14; ECF No. 15 at 8. That argument is constitutionally insufficient by itself.

If disagreement with governmental policy were enough to defeat First Amendment protection for government-employed journalists, the *Turner* exception would have no meaningful application.

The constitutional interests recognized in *Turner* necessarily encompass journalistic expression critical of governmental officials and policies. The government's general supervisory authority over a publication does not establish an overriding interest in suppressing criticism of its interference with editorial independence. Nor does the record identified in the Court's October 6 opinion establish that Plaintiff's column impaired the newspaper's ability to publish news, interfered with the performance of her assigned responsibilities, or otherwise caused operational disruption sufficient to outweigh the First Amendment interests involved.

On the contrary, the Court identified the column as consistent with Plaintiff's central responsibilities.

Plaintiff therefore submits that the *Pickering* balance favors protection of the column.

## IX. THE TIMING OF PLAINTIFF'S TERMINATION SUPPORTS HER RETALIATION CLAIM.

The Court's October 6 opinion establishes that Plaintiff published the column on April 8, 2026, and received notice of termination on April 21, 2026. Only thirteen days separated the publication and the notice of termination. That sequence supports a finding of retaliatory motivation and is precisely why the defendants conceded that fact.

The governing *Pickering* framework, as described in *Johnson v. District of Columbia*, 182 F.4th 1052, 1058 (D.C. Cir. 2026), requires consideration of whether protected expression was a substantial or motivating factor in the adverse action and whether the employer would have taken the same action in its absence.

Plaintiff submits that the timing, the subject of the column, and Defendants' earlier admission that Plaintiff was fired for writing the April 8 column, support the finding that the termination was motivated by the column. Therefore, the record supports partial summary judgment as to liability for the Plaintiff as a matter of law.

## XI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant partial summary judgment holding that *Garcetti* does not categorically exclude First Amendment protection for Plaintiff's April 8, 2026 column because it constituted a core editorial or journalistic function within the meaning of *Turner*;

2. Determine that the column addressed a matter of public concern, an element Defendants do not dispute;

3. Determine, on the undisputed record and applicable *Pickering* balance, that Plaintiff's expression is constitutionally protected;

4. Determined that the undisputed record establishes retaliatory causation on liability for Plaintiff's First Amendment retaliation claim as a matter of law;

5. Alternatively, enter an order under Rule 56(g) identifying the material facts and constitutional determinations established without genuine dispute, reserving any remaining issues for further proceedings; and

6. Award such further declaratory, equitable, and other relief as the Court determines appropriate and as requested in the Complaint.

Respectfully submitted, this, the 27th day of October 2026.

/s/ John A. Bussian
John A. Bussian
N.C. State Bar No. 15487
jbussian@aol.com
THE BUSSIAN LAW FIRM PLLC
150 Fayetteville Street
Suite 1700
Raleigh, NC 27601
Tel: 919-306-3319
Fax: 919-839-0304
*Pro Bono Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on this day the foregoing was served on the attorney of record via email addressed as follows:

Zachariah Lindsey
DOJ-USAO
zachariah.lindsey@usdoj.gov

This, the 27th day of October 2026.

/s/ John A. Bussian
John A. Bussian